**Ventura Tirado ARCE,
et al., Plaintiffs,**

v.

**ARAMARK CORPORATION,
et al., Defendants.**

**No. CIV.99–1955 RLA.**

United States District Court,
D. Puerto Rico.

Jan. 10, 2003.

---

1. See Unsworn Declaration of Ms. Vanessa Seda, Docket 45.

José Durand–Carrasquillo, San Juan, PR, for Plaintiffs.

Beatriz M. Rodríguez–Burgos, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION AND ORDER

ACOSTA, District Judge.

Plaintiffs, Ventura Tirado Arce ("Tirado") and his common law wife, Norma I. Díaz Alejandro, bring the present action against ARAMARK Services of Puerto Rico, Inc. ("ARAMARK") and ARAMARK Corporation ("ARAMARK Corporation"). Plaintiffs' complaint alleges violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Puerto Rico Law 100 of May 30, 1959, P.R. Laws Ann. tit. 29, § 146 *et seq.*, Puerto Rico Law 44 of July 2, 1985, P.R. Laws Ann. tit. 1, § 501 *et seq.*, Puerto Rico Workmen's Compensation Act, P.R. Laws Ann. tit. 11, § 1 *et seq.*, and Puerto Rico Law 80 of June 30, 1976, P.R. Laws Ann. tit. 29, § 185 *et seq.* Co-plaintiff Díaz' claim is anchored to Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141.

The defendants move for summary judgment on the ground that they proffered a legitimate, nondiscriminatory reason for its actions which the plaintiffs did not prove false. The defendants point to the lack of evidence that Tirado was a victim of age, sex or disability discrimination and further argue that Tirado did not present admissible evidence to prove that he is disabled under the ADA. Additionally, ARAMARK Corporation challenges our *in personam* jurisdiction.

The parties having briefed the aforementioned issues we hereby dispose of defendants' motion for summary judgment as follows.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") sets forth the standard for ruling on motions for summary judgment. *See, Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–61 (1st Cir.2000). It is well settled, that in ruling on a motion for summary judgment, the Court reviews the record in the light most favorable to movants and draws all reasonable inferences in their favor. *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *See*, Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994); *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d at 841. A fact is material if it might affect the outcome of a lawsuit under the governing law. *Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir. 1995).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-movant cannot rely on "conclusory allegations, improbable inferences, and unsupported speculation." *Lopez–Carrasquillo v. Rubianes*, 230 F.3d 409, 412 (1st Cir.2000); *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994); *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896

F.2d 5, 8 (1st Cir.1990). After an adequate period of time for discovery, reliance upon pure speculation is unacceptable. "Plaintiffs are required to garner either direct or circumstantial evidence to back upon their legal claims." *Dominguez v. Eli Lilly and Co.*, 958 F.Supp. 721 (D.P.R. 1997), *aff'd* 141 F.3d 1149, 1998 WL 112515 (1st Cir.1998). The facts included in the documents and the materials attached to a motion for summary judgment, as well as to the opposition papers, must be admissible in evidence. *Horta v. Sullivan*, 4 F.3d 2, 7–8 (1st Cir.1993).

Local Rule 311.12 of this District provides that "the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, properly supported by specific references to the record." A non-movant's failure to present a statement of disputed facts, embroidered with specific citations to the record, "justifies the court deeming the facts presented in the movant's statements of undisputed facts admitted." *Corrada Betances v. Sea–Land Service, Inc.*, 248 F.3d 40, 43 (1st Cir.2001); *Morales v. A.C. Orssleff's*, 246 F.3d 32, 34 (1st Cir. 2001).

In the case before us, the defendants met their initial burden by enclosing with their petition a statement of uncontested material facts which was adequately supported by documents, affidavits, and references to depositions. The burden then shifted to the plaintiffs to do likewise and establish a genuine dispute of material fact that would preclude summary judgment. Despite Local Rule 311.12's unequivocal requirement, the plaintiffs have failed to submit an adequate statement of material facts, duly supported by specific references to the record as to which they contended there are genuine issues to be tried. Even

though the plaintiffs did file a "Statement of Material Facts in Controversy" setting forth a list of facts and documents they allege are material it does not, nevertheless, meet the requirements of Local 311.12. Further, plaintiffs fail to contradict the averments presented by defendants in their statement of facts. The Court will not ferret through the record and "study all the attached documents, and carefully scrutinize all the depositions lurking for genuine issues of material facts." *Dominguez*, 958 F.Supp. at 727. Accordingly, pursuant to Local Rule 311.12 we accept as uncontroverted the facts listed in the defendants' statement. *See, Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 19 (1st Cir.1989); *Cardona v. Aramark Serv. of Puerto Rico, Inc.*, 9 F.Supp.2d 92, 95 (D.P.R.1998)("when a party opposing a motion for summary judgment fails to submit a statement of contested material facts, the court must deem to be admitted the movant's properly supported statement of material facts.").

With respect to the plaintiffs' proposed facts only those found to be material and properly supported will be deemed admitted.

## THE FACTS

Plaintiff "Tirado" was born on July 13, 1940. He was recruited by ARAMARK on May 8, 1972, at the age of 31. He claims to suffer from a skin condition known as vitiligo since around 1979.

ARAMARK is a business entity that provides food services to different enterprises in Puerto Rico. ARAMARK's services to its different clients are governed by contracts with each client. As such, ARAMARK's facilities are operated independently from the other, each one is governed by different contracts between ARAMARK and the client company, and each has its own budget. Also, the salaries of

each cafeteria employees, as well as other operational expenses, are paid from the budget allocated to each client, and each unit is in charge of recruiting its hourly employees and of purchasing its provisions pursuant to the client's needs and specifications.

While at ARAMARK, Tirado worked as a Food Service Director ("FSD"), among other positions. As part of his duties as FSD, Tirado managed a particular cafeteria, developed financial and operational objectives, unit budgets, monitored the performance of the unit and its employees, supervised the quality of the food services, met with the clients to determine their specific food services needs and assure that the goals were met, implemented sales and marketing programs, and supervised the unit's employees.

In 1997 ARAMARK negotiated a contract to operate the cafeteria at Johnson & Johnson's Janssen plant in Gurabo. At all relevant times, Lesbia Rolón ("Rolón") was ARAMARK's General Manager in charge of ARAMARK's approximately seven Johnson & Johnson accounts. As a result of differences between Rolón and Janssen's management, and due to Janssen's reported dissatisfaction with the FSD at the cafeteria, around May or June of 1998 Tirado was appointed FSD at the Janssen unit because ARAMARK's officers firmly believed that he could make a change at Janssen and improve ARAMARK's business relationship with this client. While Tirado worked at Janssen, said Company's management was very happy with ARAMARK's performance in the cafeteria. Prior to this assignment, Tirado was working as an FSD at ARAMARK's unit at the Life Savers plant in Las Piedras.

Around December 10, 1998 Tirado had a work-related accident, sought treatment from the State Insurance Fund ("SIF"), the local workmen's compensation agency, and was ordered to rest by the SIF. Pursuant to the SIF regulations, Tirado could not work while on SIF-ordered rest. While Tirado was resting, Rolón remained temporarily in charge of the Janssen cafeteria.

On December 7, 1998 Janssen notified ARAMARK that their food services agreement would be cancelled effective January 22, 1999. On December 17, 1998, ARAMARK's Managing Director, Gene Monteagudo ("Monteagudo"), acknowledged and accepted, through a letter to Janssen's management, the latter's decision to terminate its agreement with ARAMARK.

On January 25, 1999 Tirado's SIF-ordered rest came to an end when the SIF authorized him to continue treatment while working. On or around the following day, Tirado relayed this information to ARAMARK. However, he was informed that Janssen had canceled its agreement with ARAMARK, that there were no vacant FSD positions at the moment and that, for these reasons, he was being laid off. The record shows that in fact ARAMARK did not have vacancies for an FSD position in January 1999.

### ADEA

■ The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Under the ADEA, an employer is liable if age was the motivating factor in the employer's decision. "That is, the plaintiff's age must have 'actually played a role in [the employer's decision making] process and had a determinative influence on the outcome'." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (*citing Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)).

Thus, in this case, plaintiff Tirado has the burden of establishing that ARAMARK intentionally discriminated against him. *See, Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 12 (1st Cir.1998). Where, as here, there is no direct evidence of discrimination, the plaintiff may prove his case through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must prove that: (1) he was over forty (40) years of age; (2) his job performance was sufficient to meet his employer's legitimate job expectations; (3) he experienced an adverse employment action; and (4) the employer did not treat age neutrally. *See, Udo v. Tomes,* 54 F.3d 9, 12 (1st Cir.1995); *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1117 (1st Cir.1993). If the plaintiff loses his job in a reduction in force he "need not demonstrate that he was *replaced,* but may show that the 'employer did not treat age neutrally or that younger persons were retained in the same position'." *Goldman v. First Nat'l Bank of Boston, supra,* at 1117 (*citing Hebert v. Mohawk Rubber Co.,* 872 F.2d 1104, 1111 (1st Cir.1989)).

This *prima facie* showing is not onerous and once the plaintiff meets this burden, a presumption of discrimination arises and the employer must proffer a legitimate, nondiscriminatory reason for its actions. *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The burden at this second stage is one of production; it "can involve no credibility assessment." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden of persuasion remains with the plaintiff at all times. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *St. Mary's Honor Center,* 509 U.S. at 518, 113 S.Ct. 2742; *Hidalgo v. Overseas Condado Ins. Agencies,* 120 F.3d 328, 334 (1st Cir.1997).

Furthermore, "[a] defendant need not persuade the court that it was actually motivated by the proffered reason. The explanation provided must be legally sufficient to justify a judgment in its favor." *Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1335 (1st Cir.1988).

If the employer produces a legitimate, nondiscriminatory reason for its actions, the presumption of discrimination vanishes or "drops out of the picture", *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; *St. Mary's Honor,* 509 U.S. at 511, 113 S.Ct. 2742, and the burden shifts back to the plaintiff to show that the employer's reasons are a mere pretext for discrimination. *Serrano–Cruz v. DFI Puerto Rico, Inc.,* 109 F.3d 23, 25–26 (1st Cir.1997); *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 260 (1st Cir. 1994). During this third prong, the "plaintiff must do more that simply refute or cast doubt on the company's rationale", *Medina–Muñoz,* 896 F.2d at 9, but must show an impermissible discriminatory animus. *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d at 842; *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993).

In making this determination, the Court may not "sit as super personnel departments, assessing the merits or even the rationality of employers' non discriminatory business decisions." *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 825 (1st Cir.1991); *Feliciano de la Cruz v. El Conquistador Resort and Country Club,* 218 F.3d at 8; *Rodriguez–Cuervos v. Wal–Mart Stores,* 181 F.3d 15, 22 (1st Cir.1999). *See also, Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988) ("Courts do 'not sit as a super-personnel department that reexamines an entity's business decisions.' 'No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the law does] not inter-

fere." "), *quoted in Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir.2002).

The defendants have conceded, for summary judgment purposes, that Tirado presented a *prima facie* case of age discrimination. Instead they proffered a legitimate, nondiscriminatory reason for its actions, i.e., that Tirado was laid off because Janssen cancelled its food services agreement with ARAMARK effective January 1999, at which time ARAMARK had no vacant FSD positions.

Tirado now has the burden of showing that the proffered reason for plaintiff's layoff was but "a pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089; *St. Mary's Honor,* 509 U.S. at 507–08, 113 S.Ct. 2742. The plaintiffs attempted to meet this burden by: (1) citing alleged comments by ARAMARK's personnel; (2) questioning transfers and vacancies; (3) presenting statistics, and (4) other miscellaneous incidents. We shall analyze each of these arguments separately.

### 1. *The Alleged Comments*

■ According to the plaintiffs, almost two years prior to Tirado's layoff Monteagudo, Managing Director for ARAMARK Services of Puerto Rico, Inc., referred to newly hired employees as "new blood" that he wanted to inject into the Company. He also indicated that from them "we can learn." Defendants' Statement of Uncontested Material Facts (docket No. 36) ¶ 36(a). The Court finds these comments are not indicative of age discrimination. "Standard usage and common sense dictate that ... 'new blood' means change. Th[is] comment[ ], whether reviewed in the abstract or in the context of his case, simply cannot support a determination of age bias." *Fortier v. Ameritech Mobile Communications,* 161 F.3d 1106 (7th Cir. 1998). *See also, EEOC v. Clay Printing Co.,* 955 F.2d 936 (4th Cir.1992) (the state-

ment "young blood" is not probative of age discrimination or of a discriminatory animus); *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989) (the statement "younger blood" does not create a genuine issue of fact in age discrimination case). Also, it has been noted that "[w]ords of praise of youth ... do not, by themselves, indicate a bias against more mature workers." *Mesnick,* 950 F.2d at 825. *See also, Shager v. Upjohn Co.,* 913 F.2d 398, 400–02 (7th Cir.1990) (superior's remark that "[i]t was refreshing to work with a young man with ... a wonderful outlook on life and on his job" not probative of age discrimination); *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438–39 (9th Cir.1990) (the court granted summary judgment for employer despite comment that plaintiff's replacement was "a bright, intelligent, knowledgeable young man.").

Moreover, these remarks were remote in time and the plaintiffs have not offered any evidence of a nexus between the statements and Tirado's layoff. *Dominguez–Cruz v. Suttle Caribe,* 202 F.3d 424, 433 n. 6 (1st Cir.2000) (noting "circumscribed" evidentiary weight of "temporally remote" statements); *Mulero–Rodriguez v. Ponte,* 98 F.3d 670, 676 (1st Cir.1996) (statements made eight months before plaintiff's discharge were "too remote in time for a sufficient nexus to exist" between the statements and the discharge); *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 512 (4th Cir.1994) (statements made two years before the decision to terminate plaintiff were too far removed); *Phelps v. Yale Sec., Inc.,* 986 F.2d 1020 (6th Cir.1993) (statements made almost a year before plaintiff's layoff were too remote to constitute evidence of discrimination).

■ As further grounds for his age discrimination claim Tirado points to a comment made by Monteagudo express-

ing that he had some "old dust" to sweep. Plaintiffs failed, however, to present evidence as to when and under what circumstances these were made or a causal connection between said expressions and Tirado's layoff. *Gonzalez v. El Dia, Inc.,* 304 F.3d at 69–70 (Court disregarded alleged discriminatory comments when plaintiff did not specify neither the time or context in which they were made). In addition, "it is far from clear that the alleged remarks bespeak any age-based animus at all." *Id.,* at 70 (*citing Fernandes v. Costa Bros. Masonry, Inc.,* 199 F.3d 572, 583 (1st Cir.1999)) (noting that "a statement that plausibly can be interpreted two different ways— one discriminatory and the other benign—does not directly reflect illegal animus"); *Speen v. Crown Clothing Corp.,* 102 F.3d 625, 636 (1st Cir.1996) ("ambiguous remarks, tending to suggest animus based on age, are insufficient, standing alone, to prove an employer's discriminatory intent."); *Lehman v. Prudential Ins. Co. of Am.,* 74 F.3d 323, 329 (1st Cir. 1996) (same). *See also, Weston–Smith v. Cooley Dickinson Hosp.,* 282 F.3d 60, 65 (1st Cir.2002) ("[t]his circuit has made clear that inherently ambiguous statements do not qualify as direct evidence"). Plaintiffs admitted that Monteagudo did not specify what he meant with the expression and the context in which it was made renders the comment ambiguous, at best.

Based on the foregoing, the Court finds that the comments presented by the plaintiffs fail to create a triable issue of fact as to age animus.

### 2. *Employee Transfers and Vacancies*

■ The plaintiffs' proffer of age discrimination animus is also premised on ARAMARK's laying him off rather than transfer him to another unit when ARAMARK lost the Janssen account. According to the plaintiffs, ARAMARK had a practice of transferring employees to other cafeterias whenever the units in which they worked were closed down or if the FSD of a unit had to be relocated for some reason.

ARAMARK counters this argument by presenting admissible evidence indicative that transfers effected in the past were made because there were vacancies available in other units at the time. However, in this case defendants have shown that in January 1999, when Tirado was authorized by the SIF to resume work while still undergoing treatment, ARAMARK had no vacant FSD positions in other units.[1] Defendants have also proffered that past transfers or relocations were made because the Company had the need to fill those positions the employees were transferred to. The plaintiffs have not presented evidence to rebut this explanation. Therefore, there is no evidence in the record that would allow a reasonable jury to conclude that Tirado was not transferred to another unit for discriminatory reasons.[2]

---

1. The plaintiffs aver that in December 1998 ARAMARK had two vacancies for FSD positions. It is uncontested, however, that in December 1998 Tirado was not authorized to return to work pursuant to the SIF's indications. At that time, it was impossible for ARAMARK to foresee when, if ever, Tirado would be released by the SIF and/or allowed to return to work.

2. The Court notes that in December 1997 Judith Rosado, a female FSD twenty-four years younger than Tirado, was laid off because ARAMARK's contract with the unit where she worked was canceled. The same happened in February 1998 with Olga Echevarría, a female twenty years younger than Tirado. *See,* ARAMARK's Motion to Strike Plaintiffs' Statement of Contested Facts (docket No. 41) Exh. 2.

### 3. *Statistics*

■ The plaintiffs have offered the following statistical evidence to attempt to prove that Tirado's layoff was discriminatory: (a) a list of the FSD's employed by ARAMARK as of January 1999, with their birth and hiring dates; (b) a list of employees recruited by ARAMARK between 1995 and 2000 who have worked as FSD's and their ages; (c) a list of FSD's whose units were closed between 1995 and 2000 and the outcome of said closings, and (d) a table with information from the Puerto Rico Department of Labor and Human Resources regarding the employment status of the Puerto Rico civilian population in terms of their ages. According to the plaintiffs, said "statistics by age groups when compared with Defendants['] recruitment practices showed the preference of Defendants towards the younger population and suggest Defendants['] discriminatory animus against Plaintiff for reasons of age." Plaintiffs' Surreply Statement of Material Facts ¶ 122.

The Court of Appeals for the First Circuit has pointed out that in a disparate treatment context, "statistical evidence ..., in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee." *Le Blanc*, 6 F.3d at 848. In this case, the information regarding the persons who worked as FSD's between 1995 and 2000 is flawed because plaintiffs failed, for instance, to "provide important information regarding the pool of applicants." *LeBlanc*, 6 F.3d at 848. Also, "[w]e are not told whether 'qualified older employees were available or applied for those jobs'". *Id., citing Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 943 (6th Cir.1987). *See also, Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 650–51, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)

(statistics carried "little weight absent some indication of the number of [older] applicants or the composition of the relevant labor market."); *Villanueva v. Wellesley Coll.*, 930 F.2d 124, 131 (1st Cir. 1991). Significantly, "the fact that recently hired employees are younger than [Tirado] is not necessarily evidence of discriminatory intent, but may simply reflect a younger available work force." *Le Blanc*, 6 F.3d at 848. See also, *Rodriguez v. Smithkline Beecham*, 224 F.3d 1, 7–8 (1st Cir.2000) (to be probative statistics must be linked to available pool of applicants).

The plaintiffs' statistics compare the ages of two (2) FSD's who were discharged with that of FSD's who were not discharged. These figures show that plaintiff Tirado and Luis R. Díaz, 58 and 55 years old respectively, represent "66% ... of the oldest [FSD] population." However, plaintiffs fail to acknowledge that the statistics also show that the second oldest FSD, Argemiro Gómez, only six and a half months younger than Tirado, was not discharged. In addition, Luis R. Díaz, one of the two FSD's mentioned by the plaintiffs, was rehired by ARAMARK in February 2000, at the age of 57.[3] ARAMARK's Statement of Uncontested Material Facts (docket No. 36) Exh. 11; ARAMARK's Motion to Strike Plaintiffs' Statement of Contested Facts (docket No. 41) Exh. 4 pp. 7, 22, 70–72.

Plaintiffs have failed to explain how the remainder statistics show a pattern of age discrimination by defendants. Therefore, the Court finds that the statistics provided by the plaintiffs fail to create a triable issue of fact as to whether Tirado was laid off for discriminatory reasons.

### 4. *Miscellaneous Incidents*

■ The plaintiffs have further offered as evidence of age discrimination the fact

---

**3.** Plaintiff Tirado was 58 years old when he

was laid off by ARAMARK.

that in 1997 Tirado asked his supervisor, Lesbia Rolón, why a 60–year old was assigned to the third shift and she allegedly responded: "to see if he [the 60–year old] resigned." We note that there is no evidence of either time proximity, of the reason why the supervisor wanted the employee to resign or of a causal nexus between said remote incident and Tirado's layoff. There is also no evidence that Tirado and the 60–year old employee were similarly situated or that Rolón played any role in the decision to lay off Tirado. Consequently, these actions fail to create a triable issue of fact as to whether Tirado was the subject of age discrimination. *Gonzalez v. El Dia, Inc.,* 304 F.3d at 72 (when employees were not similarly situated the Court failed to find an age-based animus); *Rodriguez–Cuervos,* 181 F.3d at 21 ("a claim of disparate treatment must rest on proof that the proposed analogue is similarly situated in all material respects") (citation omitted); *Medina–Muñoz,* 896 F.2d at 10 (statements made by "one who neither makes nor influences [a] challenged personnel decision are not probative in an employment discrimination case").

■ The plaintiffs also proffer that as a result of the closing of a cafeteria in 1998, which resulted in the layoff of most of ARAMARK's employees in the unit, the cafeteria's chef who, according to Tirado, was close to 60 years of age was laid off. Tirado, however, does not know the reasons for his layoff, or whether there was any vacancy for a chef position in another unit at the time. This, added to the lack of evidence that Tirado and the other employee were similarly situated, fails to suggest a discriminatory animus against Tirado.

The Court, therefore, dismisses Tirado's claim under the ADEA.

## TITLE VII—SEX DISCRIMINATION

Title VII makes it unlawful, *inter alia,* to discharge any individual because of his sex. 42 U.S.C. § 2000e–2(a)(1). Similar to an ADEA case, plaintiff Tirado has the burden of establishing that the employer intentionally discriminated against him. The *McDonnell Douglas* burden shifting framework establishes the order of proof for situations, like the instant case, where direct evidence of sex discrimination is lacking. Under this framework, the plaintiff must present a *prima facie* case of sex discrimination by establishing that: (a) he is within a class protected by Title VII; (b) he met his employer's legitimate job expectations; (c) was laid off; and (d) his employer did not treat members of the protected class neutrally or retained persons not within the protected class in the same position. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 421 (1st Cir.1996); *Petitti v. New England Tel. and Tel. Co.,* 909 F.2d 28, 32 (1st Cir.1990).

As under the ADEA, this burden is not onerous and once established, a presumption of discrimination arises. *Burdine,* 450 U.S. at 253–54, 101 S.Ct. 1089; *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 15 (1st Cir.1994). At this point, the employer must articulate a legitimate, nondiscriminatory reason for its actions. Once the employer meets its burden of production (not of persuasion) the presumption of discrimination created by the *prima facie* case "drops out of the picture" and the plaintiff must prove that the employer's reason for its actions was a pretext for sex discrimination. *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089; *Zapata–Matos v. Reckitt & Colman, Inc.,* 277 F.3d 40, 45 (1st Cir. 2002).

The defendants conceded for summary judgment purposes that plaintiffs presented a *prima facie* case of sex discrimination. In turn, as shown above, the defendants presented a legitimate, non-discriminatory reason for the decision at issue.

▮ Tirado anchors his sex discrimination claim on the fact that three out of five FSD's recruited by ARAMARK in the two years prior to his layoff were females. He also claims that when he was transferred from ARAMARK's cafeteria at the Life Savers plant to Janssen he was substituted by a female.

The Court finds that Tirado cannot meet his burden of showing that his employer discriminated against him because of his sex. The fact that three of the five FSD's recruited by ARAMARK in 1997 and 1998 were females is in no way enough to show discrimination against Tirado. At this stage, because defendants presented a legitimate, nondiscriminatory reason for his layoff, Tirado is not aided by the presumption of discrimination created by the *prima facie* case. In addition, Tirado has not shown that he applied and was not recruited for those positions. Furthermore, Tirado has not offered any evidence as to who applied or was interviewed for the positions in question. Again, Tirado's statistics carry "little weight absent some indication of the number of [male] applicants or the composition of the relevant market." *Wards Cove Packing Co. v. Atonio*, 490 U.S. at 650–52, 109 S.Ct. 2115; *Smithkline Beecham*, 224 F.3d at 7–8; *LeBlanc*, 6 F.3d at 848; *Villanueva v. Wellesley Coll.*, 930 F.2d at 131.

Finally, Tirado's second argument for alleging sex discrimination is unpersuasive. The mere fact that a female replaced him when he was transferred to Life Savers is insufficient at this stage to prove discrimination. More importantly, the transfer from the Life Savers facility is not the adverse employment action at issue. Rather, the pertinent employment decision was Tirado's layoff for which the defendants have already presented a legitimate, nondiscriminatory reason. *Gonzalez v. El Dia, Inc.*, 304 F.3d at 71 (finding that retirement offer was not the adverse employment action at issue; instead, a suspension without pay and a termination were the adverse actions). The plaintiffs have not shown that ARAMARK's reason was false or a pretext for sex discrimination. Tirado's failure to create a triable issue of fact concerning his sex discrimination claim warrants the dismissal of said cause of action.

### ADA

▮ The ADA prescribes that no employer "shall discriminate against a *qualified individual* with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). The term "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). In order to qualify for the ADA's protection, the plaintiff bears the initial burden of establishing that: (1) he suffers from a "disability" within the meaning of the ADA; (2) he is able to perform the essential functions of his position with or without reasonable accommodation; and (3) the employer's actions were based in whole or in part on his disability. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 18 (1st Cir.2002); *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 9 n. 3 (1st Cir.1999); *Tardie v. Rehab. Hosp. of Rhode Island*, 168 F.3d 538, 541 (1st Cir.1999).

The ADA does not define the term "substantially limits." The Supreme Court has stated that " 'substantially' in the phrase 'substantially limits' suggests 'considera-

ble' or 'to a large degree'." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002). The related EEOC regulations define "substantially limits" as *either* (i) the inability to "perform a major life activity that the average person in the general population can perform," *or* (ii) being "[s]ignificantly restricted as to the condition, manner or duration under which [one] can perform a particular major life activity as compared to the condition, manner or duration under with the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). *See also, Toyota*, 122 S.Ct. at 690. On the other hand, " '[m]ajor' in the phrase 'major life activities' means important. 'Major life activities' thus refers to those activities that are of central importance to daily life." *Id.*, at 691 (citations omitted).

In our analysis of whether an impairment is a disability, we must consider: (i) the nature or severity of the impairment; (ii) its expected duration; and (iii) its anticipated long-term impact. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Where the major life activity is "working", additional factors include: (i) the geographical area to which plaintiff has reasonable access; (ii) the number of jobs in that geographical area which require the same abilities as plaintiff's former job, but from which plaintiff would be disqualified due to his impairment; and (iii) the number of jobs in that geographical area which do not require the same abilities as plaintiff's former job, but from which plaintiff would be disqualified due to his impairment. 29 C.F.R. § 1630.2(j)(3). *See also, Gonzalez v. El Dia, Inc.*, 304 F.3d at 73. "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the

impairment limits a major life activity." *Toyota*, 122 S.Ct. at 690.

Under the ADA, the term "discriminate" includes the employer's failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). Unlike other "discriminations" the plaintiff is not required to prove—through direct evidence or the *McDonnell Douglas* burden shifting scheme—that the employer's omission was motivated by discriminatory animus directed at the disability. *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir.1999).

A failure-to-accommodate claim has a different set of requirements, all of which must be met if the plaintiff is to survive a motion for summary judgment. The First Circuit Court of Appeals listed the following requirements: (a) the plaintiff must furnish sufficient admissible evidence that he is a *qualified individual with a disability* within the meaning of the ADA; (b) that he worked for an employer covered by the ADA; (c) that the employer, despite its knowledge of the employee's physical limitations, did not accommodate those limitations; (d) that the employer's failure to accommodate the known physical limitations affected the terms, conditions, or privileges of the plaintiff's employment. *See, Higgins*, 194 F.3d at 264.

In this case, the plaintiff Tirado complains that his job at Janssen forced him to walk for a total of up to ten minutes a day (at different times) back and forth between two buildings and that this affected his vitiligo condition. He argues that ARAMARK failed to provide a reasonable accommodation and that his layoff was discriminatory by reason of his disability.

Tirado, however, has failed to prove that at all relevant times he was a "qualified individual with a disability." He sustains

that he has vitiligo, a skin condition resulting in patches of depigmentation,[4] but did not present admissible evidence to prove that said condition substantially limits a major life activity. *See, Toyota*, 122 S.Ct. at 691 ("[i]t is insufficient for individuals attempting to prove disability status ... to merely submit evidence of a medical diagnosis of an impairment."); *Sutton*, 527 U.S. at 483, 119 S.Ct. 2139 ("[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment.") For instance, he did not submit evidence concerning the nature or severity of his condition nor how the condition or symptoms affect his body and to what degree.

Tirado admitted that the vitiligo does not affect his ability to perform manual tasks, take care of himself, walk, see, hear, speak, breath, learn and work. ARAMARK's Statement of Uncontested Material Facts (docket No. 36) ¶ 41. Yet, in his opposition documents he argued, without supporting admissible evidence, that the vitiligo "substantially limited main life functions of working and walking under the sun ... and interfered with [his] ability to work at Janssen." Brief in Support of Plaintiffs' Opposition (docket No. 37) p. 21.[5] Significantly, Tirado failed to present evidence to explain how and to what extent he was limited in the activities of working and walking under the sun. *Gonzalez v. El Dia, Inc.*, 304 F.3d at 74 (plaintiff must show admissible evidence as to precisely how the condition affected the major life activity in question). This Court also notes that in his deposition Tirado stated that the vitiligo did not affect his ability to work. *Colantuoni v. Alfred Calcagni &*

*Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994) (party opposing summary judgment cannot create genuine issue of material fact with affidavit that contradicts clear answers to unambiguous questions in an earlier deposition).

Even if we continue our analysis, we must note the Supreme Court's skepticism to rule that "working" is a major life activity. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Assuming arguendo that working is indeed a major life activity, Tirado failed to present evidence to show that his impairment rendered him unable to perform a broad range of jobs, as distinguished from the particular job that he held at ARAMARK. *See, Toyota*, 122 S.Ct. at 692–693 (*citing Sutton v. United Air Lines, Inc.*, 527 U.S. at 492, 119 S.Ct. 2139); *Gonzalez v. El Dia, Inc.*, 304 F.3d at 74; *Gelabert–Ladenheim v. American Airlines, Inc.*, 252 F.3d 54, 58 (1st Cir. 2001) (noting that ADA requires an "individualized inquiry," and "[w]hen the major life activity of working is at issue ... the plaintiff assumes a more fact-specific burden of proof.") 29 C.F.R. § 1630.2(j)(3)(i) (same). Tirado did not present evidence either "as to the employment demographics in the relevant geographic area, from which a factfinder rationally might assess the appropriate section 1630.2(j)(3) criteria." *Gonzalez v. El Dia, Inc.*, 304 F.3d at 74.

Tirado merely stated that his skin itched when he was exposed to the sun. This, without more, is insufficient to meet his burden to show that he had a disability under the ADA. *Toyota*, 122 S.Ct. at 691–692 (individual seeking protection must of-

---

4. W.B. Saunders, *Dorland's Illustrated Medical Dictionary,* (25th Ed.1974).

5. According to Tirado, his condition worsened when he was exposed to the rays of the sun. However, Tirado proffered no admissi-

ble evidence as to why, how and under what circumstances his condition worsened or identify specific limitations caused by his condition.

fer evidence about the extent of the limitation caused by the impairment); *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) (impairment not invariably a disability, but must be analyzed on an individual basis, taking into account the individual's ability to compensate for the impairment). After all, the ADA requires the courts to assess "the existence of a disability to be determined in... a case-by-case manner." *Toyota,* 122 S.Ct. at 692.

We have not located a single case in which a court found that "walking under the sun" is a major life activity under the ADA and we find that it is not. In any event, Tirado has not presented admissible evidence to establish a significant limitation in a major life activity. The courts do not assume that an impairment substantially limits a major life activity. Rather, the plaintiff must show how the impairment limits a major life activity. *Clemente v. Executive Airlines, Inc.,* 213 F.3d 25 (1st Cir.2000) (plaintiff failed to present evidence about how her hearing loss substantially limited the major life activities of hearing or speaking; she also did not adduce sufficient evidence that, compared to the average person in the general population, she was significantly restricted in her hearing). As the ADA provides, the limitation imposed by the individual's condition must be substantial.

The Court finds that Tirado failed to prove that his vitiligo condition constituted a disability within the meaning of the ADA. Therefore, the defendants did not have a duty to provide a reasonable accommodation.[6]

Tirado's claim that his layoff was a result of disability discrimination is also without merit. As mentioned above, Tirado failed to prove that his condition constituted a disability under the ADA. Notwithstanding this, ARAMARK presented a legitimate, nondiscriminatory reason for its actions. The plaintiffs have not shown that the reason asserted is false nor does the record suggest that his layoff was in any way related to Tirado's vitiligo condition.

Accordingly, Tirado's disability discrimination claim under the ADA is also dismissed.

## LAW 44

Tirado's disability discrimination claim under Puerto Rico's Law 44 of July 2, 1985 must also be dismissed because Tirado is not a disabled individual within the meaning of Law 44. Law 44 was amended through Law 105 of December 20, 1991 to strictly conform its provisions to the ADA. *García Díaz v. Darex,* 99 TSPR 79, 148 D.P.R. 364 (P.R.1999); *Rios v. Cidra Mfg. Operations of P.R.,* 98 TSPR 74, 145 D.P.R. 746 (P.R.1998).

Law 44 was initially enacted to prohibit discrimination against individuals with physical or mental disabilities in public institutions or private entities which received funds from the Commonwealth of Puerto Rico. *See,* Statement of Motives of Law No. 44 of July 22, 1985. Following the promulgation of the ADA, Puerto Rico's Legislature approved Law 105 of December 20, 1991 with the express purpose of extending Law 44's protection to persons employed by private institutions in Puerto Rico and to conform Law 44 to the

---

**6.** The Court further notes that Tirado never requested from ARAMARK a transfer to another unit. In addition, the record shows that although Tirado used a hat to cover his head while exposed to the sun in his free time, he chose not to wear a hat or use an umbrella at work. There is no evidence that this simple measure was not allowed by ARAMARK or would not have been effective for Tirado when walking between buildings.

ADA. *See,* Statement of Motives of Law 105 of December 20, 1991.

In order to comport Law 44 to the ADA, Law 105 amended the definition of "individual with physical disability" to include all persons that have a disability that substantially limits one or more of the major life activities; that the person have a history of such a condition; or that the person be regarded as having such a disability. *See,* 1 P.R. Laws Ann. § 501(d) (1999).

Plainly, the definition of disability in Law 44 mirrors the ADA's definition of disability. Since it was the Legislature's express intent to harmonize the local statute with the ADA, it follows that ADA precedent regarding the definition of disability must be read into cases arising from the local statute. *UPR v. Asoc. Profesores Universitarios,* 136 D.P.R. 335 (1994); *Bruno López v. Motorplan,* 134 D.P.R. 111, 1993 WL 839816 (1993); *Pérez Maldonado v. J.R.T.,* 132 D.P.R. 972, 1993 WL 840146 (1993).

Accordingly, Tirado's claim based on Puerto Rico's Law 44 is likewise dismissed inasmuch as he failed to present sufficient admissible evidence to establish that he is disabled. *See, Gonzalez v. El Dia, Inc.,* 304 F.3d at 74 n. 8 (affirming dismissal of coterminous claim under Law 44 upon dismissal of ADA claim); *Acevedo Lopez v. Police Dep't of P.R.,* 247 F.3d 26, 29 (1st Cir.2001) ("the Commonwealth prohibits employment discrimination on the basis of disability in a similar fashion as the ADA").

## IN PERSONAM JURISDICTION OVER ARAMARK CORPORATION

Defendants argue that this Court lacks *in personam* jurisdiction over ARAMARK Corporation because said entity "has no minimum contacts with this forum and operates as a separate corporate entity from ARAMARK Services of Puerto Rico, Inc., plaintiff's former employer." Brief in Support of Defendants' Motion for Summary Judgment (docket No. 36) p. 19. ARAMARK Corporation is incorporated under the laws of Delaware, with its principal place of business in Philadelphia, Pennsylvania. It is not authorized to do business in Puerto Rico and does not have physical presence or employees in Puerto Rico.

Defendants having challenged our authority to exercise personal jurisdiction it becomes plaintiff's burden to prove the necessary facts to establish that defendant is indeed amenable to judicial proceedings in this forum. *Jet Wine & Spirits, Inc. v. Bacardi & Co.,* 298 F.3d 1, 7 (1st Cir.2002); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole,* 290 F.3d 42, 50 (1st Cir. 2002)

Absent an evidentiary hearing the court may determine *in personam* jurisdiction based on a *prima facie* review of the properly documented jurisdictional facts as presented by plaintiffs. *Jet Wine & Spirits, Inc.,* 298 F.3d at 7. "[I]n evaluating whether the prima facie standard has been satisfied, 'the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law.'" *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 619 (1st Cir.2001) (citing *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 987 F.2d 39, 44 (1st Cir.1993)). *See also Daynard,* 290 F.3d at 51 (court need not resolve disputed facts but rather accepts plaintiff's proffer in ascertaining adequacy of *prima facie* showing).

When, as here, federal question is the basis of jurisdiction and there is "insufficient statutory authorization for extraterritorial service," the Court's power to assert personal jurisdiction over a nonresi-

dent defendant is governed by the forum state's long arm statute. *United Elec., Radio and Mach. Workers v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1086 (1st Cir. 1992). Our local long arm statute allows for the exercise of personal jurisdiction over nonresident defendants, *inter alios,* in situations when the litigation arises out of transactions conducted in Puerto Rico.[7]

The Due Process Clause of the Fourteenth Amendment limits the power of a forum to assert personal jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Accordingly, when allowed to by the local long arm statute, the "exercise of personal jurisdiction must be found to be consistent with the due process requirement of the United States Constitution." *Davila–Fermin v. Southeast Bank, N.A.,* 738 F.Supp. 45, 47 (D.P.R.1990). *See also, Matosantos Commercial Co. v. Applebee's Intern. Inc.,* 2 F.Supp.2d 191, 195 (D.P.R.1998); *Rafael Margarida & Co. v. Audi of America, Inc.,* 721 F.Supp. 394, 398 (D.P.R.1989). Due Process is satisfied when personal jurisdiction is asserted over a nonresident defendant that has "certain minimum contacts" with the forum, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Helicopteros Nacionales,* 466 U.S. at 413–414, 104 S.Ct. 1868; *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). As part of this analysis, "[a]ll the facts must be evaluated to determine whether the defendant purposefully established minimum contacts within the forum." *Young v. Pannell Fitz-patrick & Co.,* 641 F.Supp. 581, 585 (D.P.R.1986).

Contacts are sufficient for the exertion of personal jurisdiction when they are the result of a purposeful act by defendant. The Supreme Court has made it very clear that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (*citing Int'l Shoe Co.,* 326 U.S. at 319, 66 S.Ct. 154). Importantly, "random, isolated, or fortuitous" contacts with the forum are not enough. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). "Whether defendant's contact with the forum is described as an 'affirmative act' or 'purposeful availment,' the inherent foreseeability of consequences is one of the keystones of personal jurisdiction." *Escude Cruz v. Ortho Pharm., Corp.,* 619 F.2d 902, 904 (1st Cir.1980). Foreseeability requires that a defendant's contacts with the forum be such that said party "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The plaintiffs rely on the following factors in support of our personal jurisdiction over the nonresident codefendant: (1) a stationary with the name of ARAMARK

---

7. Rule 4.7 provides in its relevant part that " (a) [w]henever the person to be served is not domiciled in Puerto Rico, the general court of justice shall take jurisdiction over said person if the action or claim arises because said person: (1) Transacted business in Puerto Rico personally or through an agent..." 32 P.R. Laws Ann., App. III (1983).

Corporation; (2) a newspaper ad with the name ARAMARK Corporation; (3) an introduction of an employee's handbook; (4) several letters with the ARAMARK logo from certain company officers; (5) pay statement with the ARAMARK logo.

As mentioned above, pursuant to Rule 4.7 if a company transacted business in Puerto Rico, either personally or through an agent, the Court may exercise personal jurisdiction over it. Further, Rule 4.7 expressly mandates that the claim asserted in the complaint "arise" from the contacts of the non-domiciled defendant with the forum. *Escude Cruz v. Ortho Pharm.*, 619 F.2d at 905. *See also Redondo Constr. Corp. v. Banco Exterior de España, S.A.*, 11 F.3d 3, 5 (1st Cir.1993) (specific jurisdiction over defendant present inasmuch as claim resulted from defendant's acts within forum); *Am. Express Int'l, Inc., v. Mendez–Capellan*, 889 F.2d 1175, 1179 (1st Cir.1989) (defendant corporation's activities within Puerto Rico unrelated to the causes of action asserted); *Rosich v. Circus & Circus Enter.*, 3 F.Supp.2d 148, 150 (D.P.R.1998) (plaintiff's injuries must be "connected with defendant's contacts with Puerto Rico"); *Pou v. Am. Motors Corp.*, 127 D.P.R. 810, 819 (1991) (*in personam* jurisdiction requires minimum contacts with the forum and that the claim be related to or arises from those contacts).

In other words, there must be a causal relationship between the defendant's activities within the forum and the claims asserted in the pleadings.

Whether certain events "arise out of" a nonresident defendant's actions within Puerto Rico is comparable or analogous to whether certain actions can be said to be the legal, or proximate cause of the injuries suffered by a plaintiff. This court has previously commented on the concept of legal causation.

*Pizarro v. Hoteles Concorde Int'l, C.A.*, 907 F.2d 1256, 1258 (1st Cir.1990).

The record shows that ARAMARK Corporation is incorporated under the laws of Delaware; has its principal place of business in Philadelphia, Pennsylvania; is not authorized to do business in Puerto Rico, and does not have physical presence or employees in Puerto Rico.

Further, defendants have proffered, without evidence to the contrary, that the stationary, the letters and newspaper ad with the ARAMARK Corporation logo shows a "discontinued business judgment error of Mr. Monteagudo", ARAMARK Services of Puerto Rico, Inc.'s Managing Director. The Court finds this discontinued practice insufficient to extend personal jurisdiction over codefendant.

Similarly, the letter from Gregory L. Nance, officer of ARAMARK Corporation in Atlanta, Georgia, does not afford personal jurisdiction over ARAMARK Corporation. In *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir.1990), the First Circuit found that three letters sent to Puerto Rico were insufficient to warrant the exercise of in personam jurisdiction. The Court, therefore, finds that the two letters presented by the plaintiffs—less imparting than the ones rejected in *U.S.S. Yachts*—do not provide support to the allegation of ARAMARK Corporation's minimum contacts with Puerto Rico. *See also, Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir.1997) (finding three telephone calls and one letter in a seven-month period insufficient to support the exercise of personal jurisdiction when the relevant acts did not stem from those contacts).

The same conclusion follows regarding the newspaper ad. *See, Helicopteros Nacionales*, 466 U.S. at 418–19, 104 S.Ct. 1868 (placing local newspaper ads insufficient to satisfy requirements under the

Due Process Clause); *Pizarro v. Hoteles Concorde Int'l, C.A.*, 907 F.2d at 1260 (nine advertisements placed by defendant in local newspaper did not justify the exercise of personal jurisdiction).

■ The pay stub presented by the plaintiffs was sent by ARAMARK Corporation in Philadelphia, Pennsylvania to ARAMARK Services of Puerto Rico, Inc.'s employee.[8] The undisputed evidence in the record shows that ARAMARK Corporation and ARAMARK Services of Puerto Rico, Inc. operate independently and that their finances are not intermingled. It is also uncontested that ARAMARK Corporation has no employees in Puerto Rico and that the salaries of the employees of ARAMARK Services of Puerto Rico, Inc. are paid from its bank account with Banco Popular in Puerto Rico. The plaintiffs have not contested these facts in any way. Therefore, the pay statements cannot move this Court to exercise personal jurisdiction over ARAMARK Corporation.

■ Finally, the plaintiffs have failed to show how the employee handbook with the name of ARAMARK Corporation proves said corporation's involvement in Puerto Rico. Again, this is insufficient to warrant the exercise of personal jurisdiction over ARAMARK Corporation. In *Moreno v. John Crane, Inc.*, 963 F.Supp. 72, 76 (D.P.R.1997), which held as follows:

> Even though JCC is admittedly owned by JCI, the truth of the matter is that their daily operations are practically independent from each other; JCC's management is entirely unrelated to JCI's; and there is no centralized control over labor relations. Just as in Mas Marques, it did not matter that the subsidiary corporation purchased half

its inventory from its parent company and occasionally contracted with its parent company for accounting or bookkeeping services; in the instant case, the **fact that JCC purchased some equipment from JCI, used some of its stationery for writing internal memorandums and exercised its own prerogative to use JCI's catalog and resource manual does not, in and of itself, demonstrate that both corporations were actually an integrated enterprise.** (Emphasis added).

*See also, Helicopteros Nacionales,* 466 U.S. at 418–19, 104 S.Ct. 1868 (the nonresident corporation's only contacts with Texas—contract negotiations within the state, accepting checks drawn on a Texas bank, purchasing materials and services from a corporation located in Texas, and sending employees to Texas for training—"were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment.").

The allegations in the complaint, together with the evidence in the record, do not show that ARAMARK Corporation engaged in acts "done or consummated" within Puerto Rico or that plaintiffs' claims arise out of ARAMARK Corporation's actions in the forum. The record also lacks evidence to meet due process requirements.

Plaintiffs having failed to meet their burden we conclude that ARAMARK Corporation's alleged contacts with Puerto Rico are insufficient to exercise in personam jurisdiction over codefendant in this case.

## CONCLUSION

Based on the foregoing, the Motion for Summary Judgment filed by ARAMARK

---

8. Defendants included as part of their evidence a certified letter from the Puerto Rico Department of State that shows that when the letter was issued ARAMARK Corporation was not registered in the Commonwealth of Puerto Rico's Division of Corporations in the Department of State.

and ARAMARK Corporation (docket No. 36) is **GRANTED.**[9]

Accordingly, plaintiffs' federal claims as well as Tirado's claim under Puerto Rico's Law 44 are hereby **DISMISSED.**

It is further ORDERED that the remaining supplemental claims are hereby **DISMISSED WITHOUT PREJUDICE.**

It is further ORDERED that this court lacks in personam jurisdiction over codefendant ARAMARK CORPORATION.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

### *JUDGMENT*

The Court having disposed of plaintiffs' claims through its Order issued on this date, it is hereby

ORDERED AND ADJUDGED that plaintiffs' federal claims as well as Ventura Tirado's claim under Puerto Rico's Law 44 are hereby **DISMISSED WITH PREJUDICE.**

The remaining supplemental claims are hereby **DISMISSED WITHOUT PREJUDICE.**

It is further ORDERED AND ADJUDGED that this court lacks in personam jurisdiction over codefendant ARAMARK CORPORATION.

IT IS SO ORDERED.

**9.** *See also* plaintiffs' opposition (docket No. 37); defendants' reply (docket No. 38) and plaintiffs' sur-reply (docket No. 39).