**Luz Delia ROMÁN MARTÍNEZ, Plaintiff**

v.

**DELTA MAINTENANCE SERVICE, INC., Defendant**

**No. CIV.00–2098(SECJA).**

United States District Court, D. Puerto Rico.

Oct. 17, 2002.

**82**

Víctor Maldonado Gómez, Artemio Rivera Rivera, San Juan, PR, for Plaintiff.

George E. Green, James W. McCartney, San Juan, PR, for Defendant.

*OPINION AND ORDER*

ARENAS, United States Magistrate Judge.

## I. Factual Background

Plaintiff brought this action under the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter "ADA"); Law 44 of July 2, 1985, 1 P.R. Laws Ann. § 501 *et seq.* (hereinafter "Law 44") and Law 100 of June 30, 1959, 29 P.R. Laws Ann. § 146 *et seq.* (hereinafter "Law 100"), as well as under Law 80 of May 30, 1976, 29 P.R. Laws Ann. § 185, as amended (hereinafter "Law 80"), and the Worker's Compensation Act, Article 5a, 11 P.R. Laws Ann. § 7. On May 2, 2002, after a four-day trial, a jury returned a verdict in favor of plaintiff on the claim brought under the ADA. The jury returned a verdict in favor of the defendant on all other claims.

According to the evidence presented at trial, plaintiff began working for Delta Maintenance in October, 1994 as a maintenance employee. (Docket No. 23.) Shortly, plaintiff began suffering from a cervical strain which the State Insurance Fund (hereinafter "SIF") determined was the result of a work related injury and ordered her to rest in February, 1995. She worked some days but was out from March 7 to June 28, 1995. Plaintiff was discharged from the State Insurance Fund and resigned in August, 1995 in order to rest. Plaintiff was hired back by Delta in April, 1996, and in October, 1996, she was made a working supervisor where she would clean for four hours a day and supervise the rest of the work day. About 18 months later, she was promoted to an administrative supervisor. She would meet with tenants, inspect, make payroll, train new employees, all at the Centro Europa Building in Santurce. She received the highest evaluation. When someone was absent, she would do physical work. Absenteeism was not uncommon among the employees. On October 26 or 27, 1998, four employees were absent from work. While removing trash from an elevator, she hurt her back. She finished work that day but could not get out of bed the following day. She reported to the SIF, was told to rest and reported back to work two months later. She returned on November 24 or 28, 1998 and then rested from December 19, 1998 to January 20, 1999. On February 22, 1999, she hurt herself lifting trash and rested until April 15, 1999. She returned to work on April 14, 1999 and ran into Mr. Richard Vázquez Carrasquillo, operations director for Delta, in the parking lot, who told her to report to the office on April 15, 1999 at 2:00 p.m. At that time, after a supervisors' meeting, plaintiff presented a CT scan and told them that she could not do any manual

work. She was then told by Mr. Vázquez to go back to the SIF and was told one of two things, to ask for a 100% disability, or to ask for another evaluation. Nobody told her she was fired. She returned to the SIF on April 16, 1999, and filed a complaint on June 7, 1999. Plaintiff was finally discharged by the SIF on September 30, 1999. In October, 1999, plaintiff was called by Zoraida Montáñez and was asked if she would be returning to work. Plaintiff never went back to work because she was told to ask for a 100% disability. Mr. José A. Fermaint Viera made the decision, after Richard Vázquez, Zoraida Montáñez, and José A. Fermaint Viera had gotten together. She never met with Fermaint Viera.

The jury awarded plaintiff $150,000 in damages.

This matter is before the court on 1) Motion to Alter or Amend Judgment, filed by plaintiff on May 16, 2002 (Docket No. 69), opposed by defendant on May 31, 2002 (Docket No. 75); 2) Motion to Amend Judgment Pursuant to Fed.R.Civ.P. 59(e), filed by defendant on May 20, 2002 (Docket No. 70), opposed by plaintiff on May 24, 2002 (Docket No. 72); and 3) Renewed Motion for Judgment as a Matter of Law Pursuant to Fed.R.Civ.P. 50(b), or in the Alternative, for a New Trial Pursuant to Fed.R.Civ.P. 59, (Docket No. 71), opposed by plaintiff on May 30, 2002 (Docket No. 74).

## II. Analysis

### PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

Plaintiff seeks that the jury verdict of $150,000 for damages be doubled on account of the double compensation mandated by local Laws 44 and 100, since the verdict answers clearly indicate that all conditions for a claim of unlawful discrimination on the basis of disability pursuant to Laws 44 and 100 were proven, that is,

that Delta regarded plaintiff as disabled, that plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job at Delta, that Delta discharged plaintiff or otherwise adversely affected her in regard to her terms, conditions and privileges of employment, and that Delta's discharge of plaintiff or adverse act against plaintiff in whole or in part, was due to her protected disability. Plaintiff argues that the fact that the jury answered in the negative as to Law 100 does not alter the jury's finding of fact (on the ADA claim) that plaintiff was discriminated against on the basis of her disability in her terms, conditions and privileges of employment. Plaintiff invokes our focus to the substance of the verdict rather than to its form. Plaintiff concludes that the verdict has no inconsistencies since it is consistent at all times with the finding that Román was affected in her terms, conditions, and privileges of employment because of her disability, despite her not being terminated.

Delta argues in a nutshell that plaintiff prevailed on one of four causes of action and that her seeking to amend the judgment would provide plaintiff with a victory on a cause of action where the jury expressly rejected her claim. The defendant stresses that plaintiff failed to preserve her right to claim an inconsistent verdict, and that since there were no inconsistencies in the general verdict with answers to interrogatories, plaintiff's motion to alter or amend judgment should be denied. Clearly, the verdict was a general verdict accompanied by written interrogatories. See *Ramos v. Davis & Geck, Inc.*, 224 F.3d 30, 32 (1st Cir.2000).

Plaintiff failed to object to the verdict prior to the jury's discharge. Notwithstanding plaintiff's argument, to award damages under Law 44 and/or Law 100, the court would be leaving without effect a

verdict which in all respects has complete efficacy. It is clear that the jury wished to award plaintiff $150,000 under the ADA, just as it could have easily awarded plaintiff $150,000 under either Law 100 or Law 44 or both. Furthermore, the jury placed the notation "N/A" on the amount line of the Puerto Rico Anti–Discrimination Statute, and further found no wrongful termination under two other statutes.

### A. Americans With Disabilities Act, 42 U.S.C. § 12101 et seq.

Title 42 U.S.C. § 12112(a) states:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The term disability is defined as a

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Section 12132 of title 42 states that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132; see also Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir.2000). To prevail in an unlawful discrimination claim under the ADA, plaintiff must prove three things by a preponderance of the evidence: first, she must show that she was disabled within the meaning of the Act; second, she must prove that with or without reasonable accommodation she was a qualified individual able to perform the essential functions of the job; and third, she must show that the employer discharged her because of her disability. Criado v. IBM Corp., 145 F.3d 437, 441 (1st Cir.1998); see also Jacques v. Clean–Up Group, Inc., 96 F.3d 506, 511 (1st Cir.1996).

An employee may prove that she is regarded as having a disabling impairment if she can establish that either: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). To establish that an employee is regarded as having a disabling impairment, the employee does not have to prove any actual impairment. Katz v. City Metal Co., 87 F.3d 26, 33 (1st Cir.1996).

A qualified individual is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); see also Rivera–Rodríguez v. Frito Lay Snacks Caribbean, A Div. of Pepsico P.R., Inc., 265 F.3d 15, 23 (1st Cir.2001); Phelps v. Optima Health, Inc., 251 F.3d 21, 25 (1st Cir.2001).

A plaintiff would establish his or her prima facie case under the ADA if it is proved that "the employer discharged him or her in whole or in part because of [the] disability." Feliciano v. Rhode Island, 160 F.3d 780, 784 (1st Cir.1998) (citing Katz v. City Metal Co., 87 F.3d at 30). That is,

that the actions of the employer, claimed by plaintiff to have adversely affected her, were based on her disability. Once such a *prima facie* case is made, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir.2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

### B. Discrimination Against Disabled Person, Law 44.

Local Law 44 of July 2, 1985 prohibits discrimination against disabled persons. Section 505 of Title 1 of the Puerto Rico Laws Annotated states:

> Private or public institutions shall not practice, put into effect or use discriminatory employment procedures, methods, or practices against persons with any kind of physical, mental or sensory disability just for the sake of said handicap. This prohibition includes the recruitment, compensation, fringe benefits, reasonable accommodation and access facilities, seniority, participation in training programs, promotion or any other term, condition or privilege in the employment.

1 P.R. Laws Ann. § 505.

Moreover, the statute defines a person with physical or mental disabilities as:

> any person with an impediment of motor, mental or sensory nature which hinders or limits his/her inception or ability to work, study, or enjoy life fully and who is qualified to carry out the basic functions of that job or field of study, with or without reasonable accommodations.

> It shall also be understood that a person with disabilities, under the protection of this chapter, is any person whose disability significantly hinders his/her performance in one or more daily living activities, and who has a prior history of that condition, or is deemed to have said disability even if he/she does not have it.

1 P.R. Laws Ann. § 501(d).

The statute continues further and defines qualified person with physical, mental or sensory limitations as "a person with a disability who, with or without reasonable accommodations, is qualified to carry out the essential tasks of an occupation in the job he/she maintains, retains or applies for, and who is willing and able to participate in all activities of a financial and civic-social nature of everyday life." 1 P.R. Laws Ann. § 501(e). The main purpose of this statute is to protect people with physical and mental disabilities and to further employment opportunities. *See Rios Jaiman v. Cidra Mfg. Operations of Puerto Rico, Inc.*, 145 D.P.R. 746, 749 (1998).

In conjunction with the ADA, Law 44 creates an obligation for any employer to provide reasonable accommodations, and prohibits discrimination against persons with disabilities. *Id.* Thus, if an employer is found to have violated the requirements of the ADA by discharging a person or on the basis of a person's terms, conditions and privileges of employment, that employer may also be found to be in violation of Law 44. *See generally Marcano–Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 253 (1st Cir.2000).

### C. Local Law 100.

Section 146 of Title 29 of Puerto Rico Laws Annotated provides a private cause of action against an employer for discrimination. Moreover, it provides for the doubling of an award of damages. Section 146 provides in relevant part:

> Any employer who discharges, lays off or discriminates against an employee regarding his/her salary, wage, pay or re-

muneration, terms, rank, conditions or privileges of his/her job, or who fails to or refuses to hire or rehire a person, or who limits or classifies his/her employees in any way which tends to deprive a person of employment opportunities, or that affects his/her status as employee because of his/her age, as defined below, race, color, sex, social or national origin, social condition, political affiliation or political or religious ideology of the employee or applicant for employment:

(a) Shall incur civil liability:

(1) For a sum equal to twice the amount of damages sustained by the employee or applicant for employment on account of such action[.]

29 P.R. Laws Ann. § 146(a)(1). The doubling of a damage award is specifically mandated by the remedies provision of Law 44. Section 511 of Title 1 states in pertinent part that the remedies and procedures of Law 100 are available to any person discriminated against in his or her workplace by reason of a disability. *See Sánchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 723 (1st Cir.1994).

█ As can be noted, the elements to prove the ADA claim are identical to those of Law 44. As such, if a plaintiff meets the elements of the ADA, it will most likely, if not always, meet the requirements of Law 44. Therefore, under local Law 100 a damage award must be doubled. *Id.*

D. Waiver

The verdict rendered by the jury in the instant case was a general verdict accompanied by written interrogatories. This is so, because the jury was not asked to return "a special written finding upon each issue of fact," as provided by Fed.R.Civ.P. 49(a). On the contrary, the jury in this case was submitted the "appropriate forms for a general verdict, and written interrogatories upon several issues of fact." This is consistent with Fed.R.Civ.P. 49(b). Rule 49(b) provides that "[w]hen the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58." Rule 49(b) further provides that "[w]hen the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order new a trial."

█ On the other hand, it is a well established principle that the right to challenge the inconsistency of a verdict is forfeited if the party challenging the same, failed to object before the jury was discharged. *Howard v. Antilla*, 294 F.3d 244, 250 (1st Cir.2002). It has also been stated that "the only efficient time to cure these possible problems of inconsistency would be after the jury announced the results of its deliberations and before it was excused." *Skillin v. Kimball*, 643 F.2d 19, 19–20 (1st Cir.1981). It is the obligation of a party to call to the attention of the trial judge any inconsistency on the verdict. *Campos–Orrego v. Rivera*, 175 F.3d 89, 98 (1st Cir.1999). These principles are in direct agreement with the provisions of Rule 49(b), which allows any inconsistency in the verdict to be cured by the trial judge.

Plaintiff asserts that by finding in her favor on the ADA claim, but against her on the Law 44 and Law 100 claims, the jury did not return an inconsistent verdict. Plaintiff argues, however, that since the elements to support the ADA claim are identical to those of the local law, that the award of damages should be doubled in accordance with the remedy provisions of Law 44 and Law 100. Plaintiff asserts

this even though the jury specifically denied her claims under the local law.

 The instant case is an example of inconsistent verdicts. This is so, because by finding in favor of the plaintiff in her ADA claim, the jury should have found in her favor on the local law claims, for the elements that need to be proven are the same. By denying plaintiff's claim under local law, the jury in essence returned an inconsistent verdict. It was, therefore, plaintiff's duty to timely object to such inconsistent verdict between the time the verdict was read and the time the jury was excused. By failing to do so, plaintiff forfeited any post-trial challenge to the inconsistency of the verdict. *See Howard v. Antilla*, 294 F.3d at 250. Plaintiff's motion to alter and amend the judgment is therefore DENIED.

## DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT

Defendant is asking the court to amend the judgment entered in this case to reduce the amount of damages awarded from $150,000 to $100,000. In support of this contention, defendant asserts that plaintiff's award of compensatory damages is subject to the statutory cap set forth in 42 U.S.C. § 1981a(b)(3). That section states that:

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

. . . . .

(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar

weeks in the current or preceding calendar year, $ 100,000[.]

42 U.S.C. § 1981a(b)(3).

Plaintiff agrees with defendant's proposition of the applicable law. She contends, however, that defendant failed to realized that $50,000 of the $150,000 award is for backpay, which is specifically excluded by section 1981a(b)(2). Under section 1981a(b)(2) "[c]ompensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorize under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C. § 2000e–5(g) ]." Plaintiff's contention is that the award of $150,000 should not be disturbed because it is consistent with a finding of $100,000 in compensatory damages and $50,000 in backpay. Plaintiff further argues that there was evidence presented at trial as to lost wages and that the jury was instructed as to this type of damages. In addition, it is not disputed that the evidence in this case showed that defendant had 185 employees, which placed them within the $100,000 limitation on compensatory damages.

The question that needs be resolve is whether the court can infer from the verdict that the jury awarded backpay and if so, how much in order to comply with the requirements of the aforementioned statutory cap. It is beyond question that backpay is not included in the concept of compensatory damages for purposes of the statutory cap. As such, damages may be awarded in excess of the maximum amount allowed. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001) (dealing specifically with an award of front pay). We are however confronted with the problem that in the instant case, the jury was submitted a general verdict form accompanied with interrogatories and it was not asked to break down the award in compen-

satory or backpay damages. As plaintiff invites the court to do, it could be presumed that the jury intended to reserve part of the award for backpay, especially if we consider that evidence was introduced and the jury was instructed on such item of damages.

However, plaintiff's invitation cannot be accepted for two reasons. First, a court can never speculate as to what part of a general damages award constitutes backpay. *Ramos v. Davis & Geck, Inc.*, 224 F.3d at 32. Second, even if permitted to speculate, it would be impossible to accept plaintiff's calculation of $100,000 in compensatory damages and $50,000 in backpay. The possibilities are numerous. For example, the jury could have awarded $140,000 in compensatory damages and only $10,000 in backpay, and the same is true vice-versa. We cannot determine what did the jury in fact do. And as such, the court is precluded from speculating as to what part of the award constitutes backpay. The court is therefore left with the inevitable conclusion that in order to meet the requirements of 42 U.S.C. § 1981a(b)(3), the award of damages in this case must be reduced from $150,000 to $100,000. Defendant's motion to alter or amend the judgment is therefore GRANTED.

## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL

### A. Rule 50(b) Renewed Motion for Judgment as a Matter of Law

At the close of plaintiff's case, and again at the close of all the evidence, defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Now this matter is before the court on defendant's renewed motion for judgment as matter of law pursuant to Federal Rule of Civil Procedure 50(b) or in the alternative for a new trial pursuant to Federal Rule of Civil Procedure 59.

Rule 50(b) states:

(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

(A) allow the judgment to stand,

(B) order a new trial, or

(C) direct entry of judgment as a matter of law; or

(2) if no verdict was returned:

(A) order a new trial, or

(B) direct entry of judgment as a matter of law.

Federal Rule of Civil Procedure 50(b).

In ruling upon this motion it has been held that "[a] court is without authority to set aside a jury verdict and direct the entry of a contrary verdict unless the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." *Keisling v. SER–Jobs for Progress, Inc.*, 19 F.3d 755, 759–60 (1st Cir.1994). Moreover, in determining if the standard has been met, the court is required to examine the evidence in the light most favorable to the non-moving party, and the non-moving

party is entitled to "the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." *Id.* at 760 (quoting *Cochrane v. Quattrocchi*, 949 F.2d 11 (1st Cir.1991)). Defendant argues that no jury could have reasonably found in favor of the plaintiff on the ADA claim. Defendant further argues that the jury should not have been instructed on a theory of the case other than discharge; that it was error to instruct the jury on the theory of terms and conditions of employment.

To prevail in her discrimination claim under the ADA, plaintiff had to prove all of the following elements by a preponderance of the evidence: (1) that she was disabled as defined by the ADA, or regarded by the defendant as being disabled; (2) that she was able to perform the essential functions of her job, with or without reasonable accommodation; and (3) that she was discharged in whole or in part because of her disability. *Criado v. IBM Corp.*, 145 F.3d at 441. We analyze these three elements separately to determine if plaintiff presented enough evidence to sustain the verdict.

1. Was there enough evidence introduced by plaintiff that defendant regarded her as disabled?

■ A person can prove that he or she is regarded as having a disability by demonstrating that:

(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that

one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton v. United Air Lines Inc.*, 527 U.S. at 481, 119 S.Ct. 2139. No actual impairment has to be proven. *Katz v. City Metal Co.*, 87 F.3d at 33. However, the impairment must substantially limit a major life activity,. that is an activity of central importance to daily life. *Carroll v. Xerox Corp.*, 294 F.3d 231, 238 (1st Cir.2002). For ADA purposes, the EEOC has acknowledged working as a major life activity. *See Navarro v. Pfizer Corp.*, 261 F.3d 90, 97 (1st Cir.2001) (citing 29 C.F.R. § 1630.2(i)). It has been said that:

When referring to the major life activity of working, the E[qual] E[mployment] O[pportunity] Commission defines "substantially limits" as: "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and ability."

*Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523, 119 S.Ct. 2133, 144 L.Ed.2d 484(1999) (quoting 29 C.F.R. § 1630.2(j)(3)(i)(1998)). Moreover, in the recent case of *Toyota Motor Mfg., Ky, Inc. v. Williams*, the Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002). "[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." *Murphy v. United Parcel Serv., Inc.*, 527 U.S. at 523, 119 S.Ct. 2133. The plaintiff has to present evidence that the employer thought he or she was unfit

to perform a class or broad range of jobs. *See Bailey v. Georgia–Pacific Corp.,* 306 F.3d 1162, 1170 (1st Cir.2002).

At trial, there was testimony presented that Mrs. Román's supervisor told her on April 15, 1999 that because of her medical condition she should go back to the SIF and ask for 100% disability even after she had presented them an order from the SIF authorizing her to return to work. A CT scan was also presented in which it was established that Mrs. Román could not perform any manual work. Further, plaintiff was told, as she was refused to be reinstated as supervisor, that it was because of her health and that it was for her own good. There was sufficient evidence introduced as to Román's limitations in performing her cleaning functions like lifting, reaching and in general working. By telling her that she needed to ask for 100% disability, it can be inferred that the employer thought Mrs. Román was not able to perform a broad range of jobs involving physical activities, those physical activities she had to perform when employees were missing, but were not part of her duties as supervisor. From all the evidence, a jury could have reasonably found that defendant regarded her as having a physical impairment that substantially limited the major life activity of working.

2. Was there sufficient evidence introduced by plaintiff as to whether she could perform the essential functions of her job, with or without reasonable accommodations?

▮▮ Plaintiff is required to show that she could perform the essential functions of the job from which she was discharged with or without reasonable accommodations. Evidence was introduced that at the time of her dismissal plaintiff had been promoted to administrative supervisor. There was testimony on the cross-examination of Mr. Richard Vázquez that Mrs.

Román was an excellent supervisor and furthermore that she could perform all of the administrative work. Although there was evidence of a number of physical tasks she could not perform, the evidence demonstrated that those were not the essential functions of her supervising job. In fact, plaintiff offered into evidence a contract between defendant and the administration of the building in which it was agreed that the building in which defendant worked was to have a non-working supervisor. The evidence showed that plaintiff had to perform certain physical tasks only when she had employees missing. Therefore there was sufficient evidence from which the jury in this case could have reasonably conclude that plaintiff was able to perform the essential duties of her supervising job, with or without a reasonable accommodation for her. Based on this evidence, the jury found plaintiff was a qualified individual.

3. Was there sufficient evidence to establish that plaintiff's discharge was in whole or in part due to her disability?

▮▮ One of the questions submitted to the jury was whether they believed that plaintiff was discharged or otherwise adversely affected in her terms, conditions, and privileges of her employment. They answered this question in the affirmative, and although we can presume that the jury did not find that plaintiff was discharged when they denied relief under local Law 80, there was sufficient evidence from which the jury could have concluded that by failing to reinstate her in her job, the defendant adversely affected plaintiff in the terms, conditions, and privileges of the defendant.

The evidence established that Mrs. Román was refused the opportunity to return to work, that she was told to go to the SIF and ask for a 100% disability. She was

never specified a date in which she could return, or promised that she would be called back, all of this in the context of an order from the SIF specifically authorizing her to return to work. Although there was testimony that she was offered her job back some six months later, and that she was never expressly fired, there was enough evidence to enable the jury to conclude that by leaving her without a job and a salary Mrs. Román was adversely affected in the terms, conditions, and privileges of her employment by the actions of her employer.

 Defendant further argues that the jury should not have been instructed on violation of the terms, conditions, and privileges of employment. On the other hand, defendant correctly points out that "[a] party is entitled to an instruction on its theory of the case as long as that theory is legally valid and factually supported." *Continental Ins. Co. v. Bahnan*, 216 F.3d 150, 153 (1st Cir.2000). As we have stated, plaintiff presented sufficient evidence at trial from which the jury could have reasonably concluded that plaintiff was adversely affected in the terms, conditions and privileges of her employment. Defendant cannot claim that this is a theory that is legally invalid or is not factually supported. For the reasons stated herein, defendant's renewed motion for judgment as a matter of law pursuant to Rule 50(b) is DENIED.

### B. Rule 59 Motion for New Trial

Defendant alternatively asks the court to grant a new trial. The defendant claims that the verdict was against the clear weight of the evidence and that the jury instructions were erroneous.

1. Was the verdict against the clear weight of the evidence?

 It has been consistently held that "[u]nder Fed.R.Civ.P. 59, a trial judge has ample power to set aside the verdict and grant a new trial if he or she is of the opinion that the verdict is against the clear weight of the evidence." *Sheils Title Co. v. Commonwealth Land Title Ins. Co.*, 184 F.3d 10, 19 (1st Cir.1999). So long as a reasonable basis for the verdict exists, it should not be disturbed. *See Grenada Steel Indus., Inc. v. Alabama Oxygen Co.*, 695 F.2d 883, 890 (5th Cir.1983).

There was sufficient evidence from which the jury in this case could have reasonably found in favor of the plaintiff on her ADA claim. There is a reasonable basis for the verdict and I find it hard to conclude that the verdict goes against the clear weight of the evidence.

2. Was the defendant prejudiced by the instructions to the jury as to warrant a new trial?

Defendant claims that the instruction to the jury regarding discrimination on the terms, conditions, and privileges of employment prejudiced it in such a way as to warrant the granting of a new trial. Defendant further argues that the prejudice relates to the fact that it treated the case as a discharge case and not a terms and conditions case. Furthermore, the defendant argues that the instruction on the terms and conditions of employment was erroneous for being factually unsupported. The defendant timely objected to the jury instruction.

 To determine if the jury was erroneously instructed, we need to ascertain whether the instruction given "adequately reflect[s] the law applicable to the controlling issues without tending to confuse or mislead the jury." *O'Connor v. Huard*, 117 F.3d 12, 15 (1st Cir.1997), *cert. denied*, 522 U.S. 1047, 118 S.Ct. 691, 139 L.Ed.2d 636 (1998). We have already determined

the sufficiency of the evidence as it relates to this issue. We need only determine if the instruction given adequately reflected the applicable law. The jury instruction at issue here stated:

The American with Disabilities Act states that:

[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

See 42 U.S.C. § 12112.

The instruction is a verbatim transcription of the text of the statute. Thus, it cannot be claimed by defendant that it is an erroneous or inexact statement of the applicable law. Similarly, it cannot be argued by the defendant that the instruction tends to confuse the jury on a material issue. On the contrary, since the jury found against plaintiff on the local Law 80, unlawful termination claim, it is clear that they considered defendant's actions to have affected plaintiff in the terms, conditions, and privileges of her employment. In any event, it is not for the court to inquire on what the jury relied to make its decision, as long as the instructions are adequate and there is a factual basis to support such decision. Defendant's motion for new trial is DENIED.

CONCLUSION

For the reasons stated in this opinion, plaintiff's Motion to Alter or Amend the Judgment is DENIED, defendant's Motion to Alter or Amend is GRANTED. The Clerk of the Court is ordered to enter an Amended Judgment in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000) in favor of plaintiff. Defendant's Renewed Motion for Judgment as a Matter of Law or in the Alternative for a New Trial is DENIED.