**Juan ZAYAS, et al., Plaintiffs**

v.

**COMMONWEALTH OF PUERTO RICO, et al., Defendants.**

**Civil No. 04–1534(SEC).**

United States District Court, D. Puerto Rico.

July 19, 2005.

Alfredo Fernandez–Martinez, Patricia Lorenzi, Delgado & Fernandez, San Juan, PR, for Plaintiffs.

Anabelle Quinones–Rodriguez, Department of Justice Civil Rights Legal Task Force, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

The development of the facts in the instant matter has made adjudicating the same a great challenge and an even greater responsibility. At issue here is the education of a fourteen (14) year-old girl, Co-plaintiff Arianna M. Zayas–Frontera (herein "Arianna"), who, as a result of suffering a series of epilepsy attacks during her childhood, sustained frontal lobe damage and has been subsequently diagnosed with specific learning disabilities which have greatly affected her educational, emotional and social development. To make matters worse, Arianna, who attended several schools during her childhood, has now been out of school for almost four (4) years. As a result of the above-stated conditions, Arianna has a severe academic draw back. Suffice it to say, that with the beginning of a new school year approaching, time is of the essence in this case.

This case revolves around the propriety of the Department of Education's school placement for Arianna. On June 4, 2004 her parents, Co-plaintiffs Juan Zayas and Eva Frontera, filed the instant action challenging the Department of Education's refusal to pay for the placement of Arianna in a private school called the Instituto Modelo de Enseñanza Individualizada (herein "IMEI") and the Department's position that Arianna's placement in the Antonio S. Pedreira School (herein "Pedreira School") complies with federal law. Plaintiffs raise claims under the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"); Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131 *et seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"); Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983 (Due Process and Equal Protection clauses) ("Section 1983"); Puerto Rico Law 44 of July 2, 1985, as amended, 1 P.R. Laws Ann. § 504 ("Law 44"); and Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws

Ann. § 5141 ("Art.1802"). Plaintiffs have requested equitable relief, damages (punitive and compensatory), attorneys' fees and costs.

On March 16, 2005, after two (2) Pretrial and Settlement Conferences (Dockets ## 36 & 44), Plaintiffs waived their right to trial by jury (Docket # 81 at p. 4). Accordingly, the Court consolidated Plaintiffs' request for preliminary and permanent injunction and on March 16–17, April 6–7 and May 13 & 17, 2005, the Court held a bench trial (Dockets ## 57–59, 76–77, & 81). Afterwards, on May 19, 2005, the Court conducted an On-site Inspection of both IMEI and the Pedreira School (Docket # 68). Upon due consideration of the testimonial and the documentary evidence presented at trial, and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, we make the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1. Arianna suffers from epilepsy and had epileptic seizures from the time she was two (2) and a half years old until she reached eleven (11) years of age (Docket # 81 at pp. 6–7). This condition has resulted in deficit of the frontal lobe (Docket # 81 at p. 138). Furthermore, Arianna was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) when she was in Kindergarten (Docket # 81 at p. 14), has difficulties with emotional reciprocity and social interactions (Docket # 81 at p. 129) and has a severe academic draw back (Docket # 81 at pp. 92–98). See Plaintiffs' Exs. 1 & 5. Arianna is currently diagnosed with Major Depression Disorder and has symptoms of Separation Anxiety Disorder (Plaintiffs' Ex. 5).

2. Arianna was in and out of different schools from the time she was four (4) until she was eleven (11) years old. During that time she attended a total of four (4) schools (Docket # 81 at pp. 10–26).

Furthermore, from the year 2001 until the present Arianna has not attended school. Instead, she has been "home schooled" by her mother, Co-plaintiff Frontera. (Docket # 81 at p. 26). Co-plaintiff Frontera has no training as an educator nor does Arianna's "home schooling" program comply with the requirements set forth by the Department of Education (Docket # 81 at pp. 68–70).

3. In April of 2003 Co-plaintiff Frontera went to the Department of Education to look for educational opportunities for Arianna within the Department (Docket # 81 at p. 33). In November of 2003 the Department of Education completed Arianna's first Individualized Education Program ("IEP") (Docket # 81 at p. 36). As part of the IEP, the Department recommended three (3) different school alternatives for Arianna, namely the Certenejas School, the Kennedy School and the Pedreira School (Docket # 81 at pp. 37, 47 & 73). All recommendations were rejected by Arianna's parents because, as Co-plaintiff Frontera testified, Arianna's evaluations did not match their offerings and/or neither alternative provided for Arianna's "special education needs." (Docket # 81 at pp. 37 & 45).

4. In August of 2003 Plaintiffs filed an administrative complaint against the Department of Education (Docket # 81 at p. 43). The Administrative Law Judge concluded that the Pedreira School was appropriate for Arianna and fined the Department of Education $1,000 due to the Department's mismanagement of Arianna's file (Docket # 81 at pp. 52 & 53). However, Arianna's parents did not enroll her at the Pedreira School at that time (Docket # 81 at p. 49). Instead, Plaintiffs filed the instant action.

5. As part of the proceedings in this case the parties agreed that Arianna be

placed in the Pedreira School on a temporary basis in order to evaluate Arianna's reaction to said placement (Docket # 36). Therefore, Arianna attended the Pedreira School from February 22, 2005 until April 1, 2005, at which time Dr. Marelli Colón–Emeric, Arianna's treating psychiatrist, recommended that she be immediately removed from the Pedreira School (Docket # 81 at pp. 51, 141–42 & Plaintiffs' Ex. 5).

6. During the time Arianna attended the Pedreira School she had some educational and social achievements. Namely, learning to write in cursive and completing her assignments freely, smiling, singing, interacting with classmates and talking without covering her mouth. (Docket # 59 at p. 70 & Docket # 76 at pp. 12 & 26). However, at home Arianna became very angry and isolated (Docket # 81 at pp. 62–63) and experienced difficulty in sleeping, developed defiant behavior, had low energy and displayed symptoms of a major depressive disorder (Docket # 81 at pp. 135, 141). Most importantly, Arianna expressed a desire to hurt herself (cut herself) out of anger and frustration (Plaintiffs' Ex. 5). Subsequently, Arianna was diagnosed with Major Depression Disorder with symptoms of Separation Anxiety Disorder (Plaintiffs' Ex. 5 & Defendants' Ex. P).

7. After leaving the Pedreira School, Arianna's symptoms of depression diminished (Plaintiffs' Ex. 5). In fact, by April 26, 2005 Arianna displayed no symptoms of depression (Defendants' Ex. P). She was in remission (Defendants' Ex. P.).

8. During the month that Arianna was in the Pedreira School, she only met with the Department of Education's psychologist **once** (Docket # 57 at p. 21). There is no evidence that, aside from said initial interview, Arianna received further psychological services while at the Pedreira School (Docket # 76 at pp. 63–64 & Docket # 77 at p. 16).

9. The fact that Arianna had been out of school for four (4) academic years would require that Arianna go through a process of adjustment when returning to **any** school and this adjustment could bring about certain symptoms similar to those of depression; to wit, anxiety, anger and difficulties adapting (Docket # 57 at pp. 26–27, 31).

10. Arianna's psychologist, Dr. Zaida Berríos–Pagán, recommended that Arianna be enrolled in a school which provides individualized teaching, occupational therapy, speech therapy and psychotherapy (Docket # 81 at p. 98). She recommended integrated services (Plaintiffs' Ex. 1). Furthermore, Dr. Colón–Emeric was of the opinion that Arianna needed an in-school psychologist to work with her emotional needs and social skills which would in turn enhance her capacity to learn (Docket # 81 at pp. 138, 146 & Docket # 57 at pp. 20–21, 31). Dr. Colón–Emeric perceived that, if Arianna did not receive said integrated services, her ability to learn and capacity to integrate into a group would be affected (Docket # 81 at p. 146–47 & Docket # 57 at p. 32).

11. The Pedreira School can adequately accommodate Arianna's academic and social needs (Docket # 81 at p. 137). The special education teacher and the school social worker are both competent and well-prepared (Docket # 81 at pp. 99, 103, 113). The Pedreira School is not segregated. It has one special education classroom and the special education students integrate with mainstream students (Docket # 58 at p. 38–39). The Pedreira School offers a contained classroom for students with specific learning problems; pre-technical education to enhance the vocational skills of all students; library; social worker; guidance and worker one services; transportation

for students; and lunch room services (Docket # 58 at p. 88 & Docket # 76 at p. 44). *See* Plaintiffs' Ex. 3 & Defendants' Ex. C.

12. The Department of Education can provide all services necessary to meet Arianna's educational needs, but not in an integrated fashion (Docket # 81 at p. 120). The lack of integrated services negatively affects Arianna's educational needs since, at this juncture, Arianna cannot benefit from further educational opportunities without first having her emotional needs met (Docket # 81 at p. 147).

13. The Department of Education can purchase private services. This includes a student's enrollment in a private educational institution. These services are offered when the Department of Education has exhausted all resources. These private services are solely for students who have behavioral or emotional problems and who require individualized attention in order to protect the student and/or other students (Docket # 57 at p. 61 & Docket # 58 at p. 23).

14. Arianna has the potential to integrate into a mainstream educational setting once her emotional needs are addressed and stabilized (Docket # 81 at p. 99). This transition would take approximately one (1) to two (2) years (Docket # 81 at p. 146)

15. IMEI is a private school for students with learning disabilities. It offers **integrated (in-school)** therapeutic services, such as educational, speech, psychological and occupational therapy (Defendants' Ex. A).

16. Plaintiffs presented no evidence of discriminatory animus by the Department of Education. That is, Plaintiffs presented no evidence that the Department of Education discriminated against Arianna because of her disability or that they treated Arianna differently than other similarly situated special education students.

17. Plaintiffs presented no proof of money damages.

After having heard all the testimony in this case, and taking into consideration Arianna's emotional needs combined with the unusual circumstance of being out of school for almost four (4) years and her subsequent reaction to the placement at the Pedreira School, we find that Arianna's need for constant supervision and an in-school psychologist is indispensable, at least **for a transitional period of one (1) year.** The Court notes, however, that had Arianna not been diagnosed with Major Depression Disorder after her enrollment in the Pedreira School, our holding might have been different. The Pedreira School is an excellent alternative and would otherwise meet the requirements of federal law, a free appropriate public education. However, unfortunately **at this point in time,** Arianna's current mental evaluations reveal that it would be impossible for her to benefit from the special education opportunities available at the Pedreira School prior to having her psychological needs addressed.[1]

**Conclusions of Law**

**A. Discrimination Claims**

**1. IDEA**

The purpose of IDEA is "to ensure that all children with disabilities have available free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). Thus,

---

1. Arianna's Educational Evaluation dated October 5, 2003 and performed by Omayra Santiago, the Department of Education's School

Psychologist, naturally, does not take into account Arianna's *current* emotional and psychological needs (Defendants' Ex. B).

in order to comply with IDEA, the Department of Education is required to provide Arianna with a "free appropriate public education" and "related services" to meet her "unique needs." It follows that the availability of said "related services" may be essential in order to comply with IDEA. The statute provides a list of some examples of "related services," some of which include speech-language therapy, psychological services, occupational therapy and counseling. 20 U.S.C. § 1401(22).

Although the statute includes a definition for "free appropriate public education," it sheds little light on what constitutes "appropriate" under the statute, leaving the Court with a difficult problem.[2] *See Bd. of Ed. v. Rowley*, 458 U.S. 176, 202, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (stating that "the determination of when handicapped children are receiving sufficient educational benefits to satisfy the requirements of the Act presents a more difficult problem."). *See also Maine Sch. Adm. Dist. No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9, 11 (1st Cir.2003) ("IDEA is not self-executing, and parents, school officials, bureaucrats, and judges alike have struggled to master its intricacies.").

We look to IDEA case law for guidance. The U.S. Supreme Court has defined "free appropriate public education" as consisting of "educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Rowley*, 458 U.S. at 188–89, 102 S.Ct. 3034. Thus, IDEA requires that the child receive sufficient supportive services to permit him/her **to benefit** from the educational services. *Id.* at 200. This presupposes that the services for each student will be individually designed to fit his/her educational benefit. *Id.* at 201.[3] Merely providing for a student's academic needs is not enough. *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1089 (1st Cir.1993) ("Purely academic progress is not the only indicium of educational progress." (citations omitted)). As such, the IEP must take into account all of the student's academic, physical, emotional and social needs. *Id.* (citation omitted).

The crux of the instant matter is precisely what constitutes an "appropriate" education for Arianna. However, to answer this question we must first determine Arianna's unique needs and the supportive services necessary for Arianna to benefit from said free public education. Naturally, this requires that we consider Arianna's psychological needs. *See González v. P.R. Dept. of Ed.*, 254 F.3d 350, 352 (1st Cir.2001)(*citing Rome Sch. Comm. v. Mrs. B.*, 247 F.3d 29, 33 n. 3 (1st Cir.2001)) ("The question is whether these behavioral

---

**2.** "The term 'free appropriate public education' means special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d) of this title." 20 U.S.C. § 1401(8).

**3.** IDEA provides that an Individualized Education Program (IEP) be prepared for each student in order to determine the student's individual needs. The Act delineates the steps to take in the formulation of an IEP. 20 U.S.C. § 1414. Furthermore, "[a]n [IEP] is a written plan developed jointly by the local educational agency, the school teaching staff, the child's parents, and an expert qualified to interpret test results. The [IEP] records the child's present level of performance, sets annual educational objectives, and details the special services necessary to meet these objectives. The [IEP] must be reviewed and revised annually." *Weber v. Cranston Sch. Committee*, 212 F.3d 41, 45 n. 2 (1st Cir.2000)(internal citations omitted).

disturbances interfere[ ] with the child's ability to learn."). Thus, we embark in a fact-intensive inquiry.

Defendants propose that in accordance with Arianna's IEP, the Pedreira School is appropriate and meets Arianna's needs since it provides Arianna the required special education in addition to psychological therapy outside of school. Plaintiffs, on the other hand, argue that Arianna needs to be enrolled in a school which provides integrated services so that Arianna's emotional needs may be addressed simultaneously with her academic needs. Thus, the inquiry in this case is whether Arianna's proposed IEP is "adequate and appropriate" for Arianna **at this point in time.** *See e.g., Lenn,* 998 F.2d at 1086.

■ There are three (3) main differences between the Pedreira School and IMEI: (1) the Pedreira School is a public school and IMEI is private; (2) the Pedreira School has special education students and mainstream students and IMEI only has special education students, most of which have co-existing behavioral and psychological needs; and (3) the Pedreira School does not provide integrated educational and psychological services and IMEI does. After considering all the facts in this case and hearing the testimony of Arianna's treating psychiatrist pertaining to Arianna's reaction to being enrolled at the Pedreira School, the Court concludes

that **at this time** the Pedreira School cannot meet all of Arianna's "unique needs." We reach this conclusion based solely on the fact that IMEI has on-site psychological services which have proven to be of great importance in Arianna's integration to school. The unique circumstances before us, namely that Arianna has been out of school for almost four (4) years, that Arianna was diagnosed with Major Depression Disorder after being enrolled at the Pedreira School and that Arianna communicated thoughts of hurting herself, support our finding in this case. Once Arianna's psychological needs are addressed at IMEI, Arianna should be able to attend a less restrictive school[4] such as the Pedreira School.[5]

In *Florence County School District v. Carter,* the U.S. Supreme Court stated that:

> There is no doubt that Congress has imposed a significant financial burden on States and school districts that participate in IDEA. Yet public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice.

510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). Thus, it is well settled that if

---

4. IDEA provides that "to the extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily". 20 U.S.C. § 1412(a)(5)(A).

5. The Court is mindful that the Department of Education's Administrative Judge's decision pertaining to Arianna's IEP and school placement is entitled to "due weight." *Lenn v. Portland Sch. Comm.,* 998 F.2d 1083, 1087 (1st Cir.1993) (citations omitted). However, it is evident that from the time the administrative decision was issued and, as a result of the parties' agreement to temporarily place Arianna in the Pedreira School, the circumstances in this case have changed dramatically. This new set of facts warrant a different solution.

the school district cannot provide the "free appropriate public education," it can pay for the student's enrollment at a private institution. *Kathleen H. v. Mass. Dept. of Ed.,* 154 F.3d 8, 11 (1st Cir.1998) (*citing* 34 C.F.R. § 300.401(a)(2)). Accordingly and for the reasons stated herein, Defendants are hereby **ORDERED** to pay for Arianna's enrollment in IMEI **for a transition period of one (1) year.**

## 2. RA

■ The RA provides that "[n]o otherwise qualified individual with a disability in the United States, [ ], shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal Financial assistance." 29 U.S.C. § 794. A showing of discriminatory animus is required to have a colorable claim under Section 504 of the RA. That is, "[s]omething more than a mere failure to provide the 'free appropriate education' required under [IDEA] must be shown." *Monahan v. State of Nebraska,* 687 F.2d 1164, 1170 (8th Cir.1982); *Colin v. Schmidt,* 715 F.2d 1, 10 (1st Cir.1983) (" '[s]omething more' such as 'bad faith or gross misjudgment' " is required); *Nieves–Márquez v. Commonwealth of Puerto Rico,* 353 F.3d 108, 125 n. 17 (1st Cir.2003) ("it may be that § 504 claims require some showing of deliberate indifference not required by IDEA") (citation omitted). In the case at bar, Plaintiffs presented no evidence of deliberate indifference or bad faith by the Department of Education. Instead, a genuine disagreement existed be-tween the parties as to what constituted an "appropriate" education for Arianna and which were Arianna's unique needs. Accordingly, Plaintiffs' claims under Section 504 of the RA will be **DISMISSED WITH PREJUDICE.**

## 3. ADA

■ The ADA prohibits, *inter alia,* certain types of discrimination against an otherwise qualified individual with a disability. Under the ADA, the plaintiff bears the initial burden of establishing each element of his or her claim for disability discrimination. *See e.g., Cook v. State of Rhode Island,* 10 F.3d 17, 22 (1st Cir.1993). Once the plaintiff has done this, the burden shifts to the defendant to produce evidence showing that his or her actions were based on nondiscriminatory reasons. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the defendant produces such evidence, then the plaintiff must show that the sole reason for defendant's adverse decision was discrimination. *Id.; Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 264 (1st Cir.1999)(stating that the third stage requires that the plaintiff point to evidence, direct or circumstantial, of a particularized discriminatory animus). As discussed above, Plaintiffs have made no showing of a discriminatory animus on the part of the Department of Education. Thus, Plaintiffs' ADA claims will be **DISMISSED WITH PREJUDICE.**[6]

---

**6.** Plaintiffs seek punitive and compensatory damages (Docket # 1). However, "punitive damages are clearly not available on either the § 504 or the Title II claim". *Nieves–Márquez v. Commonwealth of Puerto Rico,* 353 F.3d 108, 126 (1st Cir.2003). Furthermore, to state a claim for compensatory damages under the RA or the ADA, Plaintiffs would have had to prove: (1) the Department of Education's intentional discrimination; and (2) Plaintiffs' economic harm. Plaintiffs have done neither. Thus, no money damages are recoverable under the RA or the ADA. *Id.* at 127 (compensatory damages "are not available when there was no evidence of economic harm or animus toward the disabled.").

## B. Section 1983 Claims

At the outset, the Court notes that Co-plaintiffs Zayas, Frontera and the Zayas–Frontera conjugal partnership lack standing to sue under Section 1983. In the instant case, Plaintiffs' Section 1983 claims arise out of the allegedly discriminatory acts of Defendants directed at Arianna. The First Circuit case law is crystal clear to the effect that only the party whose civil rights have been violated may bring a claim pursuant to that Section. *See Judge v. City of Lowell,* 160 F.3d 67, 76 n. 15 (1st Cir.1998)("A section 1983 lawsuit is a personal action"). "Therefore, only the person toward whom the state action was directed, and not those incidentally affected, may maintain a § 1983 claim." *Pittsley v. Warish,* 927 F.2d 3, 8 (1st Cir.1991). *See also, Rodríguez–Oquendo v. Toledo–Dávila,* 39 F.Supp.2d 127, 131–32 (D.P.R.1999)(holding that "family members do not have an independent claim under § 1983 unless the constitutionally defective conduct or omission was directed at the family relationship"). Accordingly, Co-plaintiffs Zayas', Frontera's and the Zayas–Frontera conjugal partnership's Section 1983 claims will be **DISMISSED WITH PREJUDICE.**

As to Arianna's Section 1983 claims for alleged violations to the Due Process and Equal Protection clauses, we note that having granted Arianna enrollment at IMEI the only remedy which could be sought at this juncture would be for money damages. In *Nieves–Márquez v. Commonwealth of Puerto Rico* the First Circuit discussed the availability of damages in an action under IDEA and Section 1983. 353 F.3d 108 (1st Cir.2003). The First Circuit proposed that "if federal policy precludes money damages for IDEA claims, it would be odd for damages to be available under another vehicle, such as § 504 or Title II, where the underlying claim is one of violation of IDEA." *Id.* at 125. The First Circuit further stated that "several circuits have barred money damages under 42 U.S.C. § 1983 for IDEA-based claims for precisely this reason." *Id.* at 125–26. In that occasion the First Circuit declined to settle the issue. However, given the First Circuit's position on the matter and the persuasive case law from other circuits, coupled with Plaintiffs' lack of evidence as to the alleged damages suffered, we must decline to entertain Arianna's request for money damages under Section 1983. Thus, absent binding legal authority allowing for the imposition of damages under Section 1983 in conjunction with IDEA's equitable relief, Arianna's claims under Section 1983 will be **DISMISSED WITH PREJUDICE.**

## C. Attorneys' Fees and Litigation Expenses

Having granted equitable relief under IDEA and dismissed all other federal claims, we must examine the propriety of Plaintiffs' request for attorneys' fees pursuant to the fee-shifting provision of IDEA. Section 1415(i)(B) provides, in its pertinent part, "[i]n an action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). Although the statute specifies that the Court may in its discretion deny a prevailing party's attorneys' fees, the scope of this discretion is limited to a finding of special circumstances. A.Hirsch & D.Sheehey, *Awarding Attorneys' Fees & Managing Fee Litigation,* pp. 16–17 (2nd ed. 2005) ("Although fee-shifting statutes generally make fee awards for prevailing parties discretionary, the Supreme Court has stated that an award should be given absent 'special cir-

cumstances' that render one unjust." (citation omitted))

■■■ A prevailing party is any party who " 'succeed[s] on any significant issue ... which achieves some of the benefits plaintiffs sought in bringing suit.'" *Maine Sch. Adm. Dist.*, 321 F.3d at 14 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). To decide whether Plaintiffs are "prevailing parties," we must make "a qualitative inquiry into the import of the result obtained." *Id.* at 15 (citations omitted). That is, compare the relief requested by Plaintiffs with the relief granted by the Court in order to decide whether Plaintiffs received the principal relief requested or whether their success was a "de minimis victory." *Id.* at 14 ("the change [in the parties' legal relationship] must be material; a purely technical or de minimis victory cannot confer prevailing party status." (citations omitted)); *Kathleen H.*, 154 F.3d at 14 ("To qualify as a prevailing party, a litigant must demonstrate that: (1) He obtained relief on a significant claim in the litigation; (2) such relief effected a material alteration in his legal relationship with the defendant; and (3) the alteration is not merely technical or de minimis in nature."); *Doe v. Boston Pub. Schs.*, 358 F.3d 20, 24 (1st Cir.2004)(a prevailing party is "a party who has received a judgment on the merits or a court-ordered consent decree.").

In the instant action, although Plaintiffs have only prevailed on their IDEA claim, Plaintiffs' main request has consistently been that Arianna be placed in IMEI at the expense of the Department of Education. Furthermore, at trial, Plaintiffs argued that said placement would only need to be for a transitional period of one (1) to two (2) years. Having granted said relief, we hold that the legal relationship between the Department of Education and Plaintiffs has been altered and that, in said respect, Plaintiffs are "prevailing parties." Accordingly, absent any "special circumstances," we find that Plaintiffs are entitled to the recovery of reasonable attorneys' fees.[7] *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 523, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)(*quoting Newman v. Piggy Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)). Plaintiffs are instructed to file an application for attorneys' fees within the next **forty-five (45) days**. *See* Local Rule 54(a) of the Local Rules for the United States District Court for the District of Puerto Rico.

### D. Supplemental Law Claims

#### 1. Puerto Rico Law 44

Law 44 bans discrimination against the disabled by any public or private institution that receives funds from the Commonwealth of Puerto Rico. Specifically, Law 44 provides that said institutions may not take any action to "discriminate against persons with some type of physical or mental disability." 1 P.R. Laws Ann. § 504. This statute was modeled after the

---

**7.** The absence of special circumstances, at this juncture, is based on: (1) Defendants' failure to address this issue in their post-trial brief, and (2) the U.S. Supreme Court's and Courts of Appeals' position that special circumstances only exist in the presence of "highly unusual conditions." A.Hirsch & D.Sheehey, *Awarding Attorneys' Fees & Managing Fee Litigation*, p. 18 (2nd ed.2005). Given that Arianna's parents decision to keep Arianna out of school for four (4) academic years undeniably caused Arianna additional difficulty in integrating to the Pedreira School, a school which otherwise could have been "appropriate" within the meaning provided by IDEA, our holding today in no way limits our discretion to make adjustments to Plaintiffs' application for attorneys' fees as we deem just.

ADA. It was intended to harmonize Puerto Rico law with the federal statutory provisions of the ADA. *Arce v. ARAMARK Corp.*, 239 F.Supp.2d 153, 169 (D.P.R. 2003). Thus, the elements of proof for a claim under Law 44 are essentially the same as for a claim under the ADA. *See e.g., Román–Martínez v. Delta Maint. Serv., Inc.*, 229 F.Supp.2d 79, 85 (D.P.R. 2002). Having found that Plaintiffs failed to prove Defendants' discriminatory animus, we hold that Plaintiffs' claims under Puerto Rico Law 44 should suffer the same fate as their ADA claims. Accordingly, Plaintiffs' claims under Puerto Rico Law 44 will be **DISMISSED WITH PREJUDICE.**

### 2. Article 1802

 The Puerto Rico Civil Code, in its pertinent part, provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 P.R. Laws Ann. § 5141. Thus, to prevail in an action under Art. 1802, Plaintiffs would have had to show: (1) that the Department of Education acted negligently; (2) that they suffered damages; and (3) a causal link or connection between the Department's actions/negligence and said damages. *See Gierbolini–Rosa v. Banco Popular De P.R.*, 121 F.3d 695, 1997 WL 469391, *3 (1st Cir.1997); *Bonilla v. P.R. Highway Authority*, 368 F.Supp.2d 113, 118 (D.P.R.2005). A showing **on each** of these three (3) elements is required in order to be entitled to an award under Art. 1802. In the case at bar, Plaintiffs failed to present any evidence of damages that would allow the Court to make a reasonable inference on the amount of damages suffered, if any, as a result of the Department of Education's actions. Instead, Plaintiffs' evidence at trial was circumscribed to the Department of Education's refusal to purchase private educational services for Arianna, Arianna's needs on that respect, and the Department of Education's actions since Plaintiffs first request for educational services.

While Co-plaintiff Frontera testified about her family's and Arianna's experience once Arianna began attending the Pedreira School (e.g. "it has been a very hard and a very difficult process") (Docket # 81 at pp. 56–66 & Docket # 77 at pp. 3–19), this was a direct result **of an agreement** reached by both parties as a means to evaluate Arianna's needs and the propriety of her school placement (Docket # 36). Thus, this negative experience, while unfortunate, was not caused by the Department of Education. Accordingly, absent proof of damages suffered on account of the Department, Plaintiffs' cause of action under Art. 1802 of the Puerto Rico Civil Code must be **DISMISSED WITH PREJUDICE.**

### Conclusion

After carefully evaluating the evidence presented at trial and in the record, together with the applicable law, Plaintiffs' request for relief pursuant to IDEA is **GRANTED** and the Department of Education is **ORDERED** to pay for Arianna's enrollment in IMEI **for a transition period of one (1) year.** Plaintiffs' claims under RA, ADA, Section 1983, Puerto Rico Law 44 and Art. 1802 are **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

**SO ORDERED.**